UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BJC HEALTH SYSTEM, et al.,          )
                                    )
            Plaintiffs,             )
                                    )
      vs.                           )          No. 4:02-CV-252 CEJ
                                    )
COLUMBIA CASUALTY COMPANY           )
d/b/a CNA HEALTHPRO,                )
                                    )
            Defendant.              )

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion for
partial summary judgment on the issue of damages. Defendant
Columbia Casualty Company d/b/a CNA HealthPro ("Columbia") promised
to provide three years of reinsurance to plaintiff ATG Assurance
Company ("ATG"), who was the captive insurer of plaintiff BJC
Health System ("BJC"). BJC and ATG brought suit against Columbia
for breach of contract after Columbia failed to provide the
reinsurance for the third year of the contract. In its motion for
partial summary judgment, Columbia argues that the plaintiffs'
damage request includes an amount that cannot be recovered as a
matter of law.

**I. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides
that summary judgment shall be entered "if the pleadings, deposi-
tions, answers to interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no genuine issue as
to any material fact and that the moving party is entitled to a
judgment as a matter of law." In ruling on a motion for summary

judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## II. Factual Background

Plaintiff BJC is a hospital system, and plaintiff ATG is its subsidiary and captive insurer. ATG issued an insurance policy to BJC that covered BJC's professional liability exposure above a defined amount retained and self-insured by BJC. In 1998, ATG contracted with Columbia for reinsurance of the ATG excess liability policy. Columbia agreed to provide three years of

reinsurance at a fixed annual premium, subject to certain conditions precedent. Plaintiffs claim that the contract was breached when Columbia refused to renew the policy for the third year of the agreement, which was to begin on October 1, 2000. Plaintiffs purchased reinsurance from Zurich to provide coverage for the time period not renewed by the defendant, but had to pay a substantially higher premium for coverage with a different scope than that which had been provided under the Columbia policy.

Under the Columbia policy, Columbia had an obligation to reimburse ATG, who had an indemnity obligation to BJC above defined BJC retention amounts both on a per occurrence and on an aggregate basis. The per occurrence retention meant that for every claim against it, BJC self-insured the first $1,000,000 to $3,000,000 of its liability (depending on which hospital was involved) and that Columbia was obligated to indemnify ATG for amounts above that retention that ATG paid on any specific claim. The aggregate retention meant that once BJC paid a total of $22,000,000 for liability claims made against it during the reinsurance policy year, Columbia became obligated to indemnify BJC (through ATG) for all of its hospitals' additional professional liability payments up to the limits of the reinsurance.

For the third and final year of the policy, BJC's aggregate retention was $23.1 million, which meant plaintiffs would have been responsible for $23,100,000 in liability claims before the reinsurance would indemnify ATG. Under the Zurich policy, however, plaintiffs' aggregate retention was $25,000,000. Plaintiffs

therefore faced an additional $1,900,000 in liability before ATG's indemnity obligation was covered by the reinsurer.

Plaintiffs claim a total of $1,240,098 in their most recent calculation of damages. Zurich charged $2,380,000 for the policy purchased by plaintiffs after defendant's breach. Plaintiffs subtract from that figure the amount that they would have paid for the final year of the Columbia policy to arrive at the amount of damages. Defendant acknowledges that, assuming it breached the contract, the plaintiffs were damaged in the amount of the additional premium paid to Zurich. However, plaintiffs are also seeking damages in an amount representing what it *would* have cost to buy coverage with an aggregate that would have been in effect for the final year of Columbia coverage ($23.1 million), even though they did not actually purchase that coverage.

Plaintiffs asked Zurich to provide an estimate of what it would cost to lower the aggregate from $25 million to the aggregate that had existed under the Columbia policy. Zurich estimated that such a policy would cost an additional $1.2 million. However, Zurich expressly stated that it was not offering to sell such a policy to BJC or ATG, and so the plaintiffs did not purchase the coverage.[1] Nevertheless, plaintiffs include that estimate in their

_____

[1] The requested estimate was based on lowering the aggregate retention from $25,000,000 to $22,000,000. The plaintiffs' latest damage calculation is based on an aggregate retention amount of $23,107,103 instead of the $22,000,000 considered by Zurich and discussed in deposition testimony. In the new damage calculation, plaintiffs have proportionately discounted Zurich's estimate of gap coverage based on the higher aggregate retention. It is not at all clear to the Court that this is the appropriate

-4-

damage calculation, claiming that it, along with the cost of the premium actually paid to Zurich, fairly represents the value of the breached contract.

The question presented by the defendant, in moving for partial summary judgment, is whether this quotation for coverage that was never purchased can be properly included in plaintiffs' measure of damages.

### III. Discussion

Defendant argues that part of plaintiffs' claim for damages cannot be recovered as a matter of law, because their calculation includes an amount that does not represent an actual loss to the plaintiffs. Such a recovery, defendant argues, would result in a windfall for the plaintiffs. Plaintiffs, on the other hand, state that they are merely seeking the benefit of their bargain with the defendant, and argue that the full recovery of their claim would put them in the same position that they would be in had the defendant not breached the contract. The parties indicate no dispute regarding issues of material facts, and the Court agrees that the damages issue is appropriate for summary adjudication.

_____

method for estimating the cost of the premium to lower the aggregate retention from $25 million to $23.1 million instead of $22 million. Additionally, the new damage calculation contains some adjustment for physicians' coverage provided by Zurich and not by Columbia, but the precise parameters of this coverage are not discussed by the parties' briefs. Also, the damages are prorated to reflect that the Columbia policy was slightly extended, and the replacement Zurich policy was not for a full calendar year. For the purposes of this analysis, the Court finds it unnecessary to discuss the precise dollar amount of damages available to the plaintiffs; rather, the Court will focus on the relevance of the Zurich estimate to the damages claimed.

Under Missouri law,

> [g]eneral rules applying to the measure of damages for
> breach of contract are stated as "the amount which will
> compensate the injured person for the loss which a
> fulfillment of the contract would have prevented or the
> breach of it has entailed.... Compensation is the value
> of the performance of the contract; the person injured
> is, as far as it is possible to do so by a monetary
> award, to be placed in the position he would have been in
> had the contract been performed. He is entitled to the
> benefit of his bargain, that is, whatever net gain he
> would have made under the contract."

Boten v. Brecklein, 452 S.W.2d 86, 93 (Mo. 1970) (quoting 25 C.J.S.
Damages § 74, pp. 843, 846-849).

Plaintiffs define the "benefit of their bargain" as being
reinsured under a policy with a $23,100,000 aggregate. Had the
plaintiffs purchased another policy with a $23,100,000 aggregate,
the plaintiffs would be in the same position that they would have
been in had the contract been performed, and Columbia would be
liable for the difference between the cost of the policy it failed
to provide and the cost borne by BJC and ATG in purchasing a
replacement. However, it is undisputed that although plaintiffs
purchased another policy after defendant's breach, it was not an
exact replacement.

Bruce Lane, plaintiffs' representative, testified regarding
the plaintiffs' calculation of damages:

> [W]e specifically had asked Joe Sullivan, our account
> exec at Zurich, to give us a quote or an indication on
> what the Zurich premium would be if we had a $22 million
> aggregate rather than a $25 million aggregate. And so he
> had indicated that it would cost an additional $1.2
> million in premium to have that reduced aggregate.

The plaintiffs included the estimate in the damage calculation in order to "compare apples-to-apples." However, neither BJC nor ATG subsequently paid any money to reduce the premium because, as Bruce Lane testified, "It was not a quote, so we couldn't pay it."

Plaintiffs have attempted to place a value on the breached contract by adding the amount of the policy they purchased from Zurich to an estimate of what it would have cost to obtain an exact replacement for the Columbia policy. However, the breach of contract did not represent an actual loss to the plaintiffs until the time came for Columbia to actually perform its part of the bargain and indemnify ATG for claims over the aggregate limit. The value that the plaintiffs propose is potentially the value of the coverage at the time of the breach, but it is not the value of the plaintiffs' loss. A calculation of the latter, not the former, is required to properly determine the amount of damages. "Damages for breach of contract are limited to the loss of the benefit itself." <u>Overcast v. Billings Mutual Ins. Co.</u>, 11 S.W.3d 62, 67 (Mo. 2000). <u>See also</u> <u>Dierkes v. Blue Cross and Blue Shield of Mo.</u>, 991 S.W.2d 662, 669 (Mo. 1999) ("a successful plaintiff is entitled to the loss the fulfillment of the contract would have avoided or that its breach has caused.")(<u>citing</u> <u>Boten v. Brecklien</u>, 452 S.W.2d 86, 93 (Mo. 1970)).

"In a breach of contract case, the nonbreaching party is entitled to the value of performance of the contract." <u>Elsberry v.</u> <u>Boulevard Motors, Inc.</u>, 886 S.W.2d 732, 736-37 (Mo. App. 1994). Here, the contract was for the provision of insurance to indemnify

plaintiffs if and when they should incur more than $23.1 million in claims during the 2000-2001 policy year. This is not the same as the more common denial-of-claim case, where an insurance company refuses to pay for a claim made by the insured. There, the breach would be refusal to pay a valid claim under an existing contract; here, the breach was refusal to actually issue a policy for the agreed-upon third year. Still, the value of the performance is the amount of any claims that Columbia would pay instead of BJC/ATG, or the amount of any loss prevented by the ownership of the policy. The parties agree that to date, the aggregate retention limit for the policy year at issue has not been breached, and the plaintiffs have not had to pay claims that would have fallen to Columbia had the policy remained in place.

It is true that there is a value inherent in the provision of the insurance itself, apart from any payments that Columbia might be required to make. Plaintiffs argue that the purpose of the policy, and indeed of insurance generally, was to shift risk from BCJ and ATG to the reinsurer. Because the third year of coverage at the lower aggregate was not provided, the risk, at least to the increased extent of the $1.9 million, remains with BJC/ATG. There may well be ascertainable costs associated with that risk, but plaintiffs have not made that specific claim nor presented evidence of any costs associated with it. Plaintiffs state that "there is a value for coverage of the $3,000,000 aggregate risk that defendant unilaterally shifted to plaintiffs by breaching its contract with them," and contend that the valuation on this risk is

$1.2 million. The estimated amount of a premium to cover the increased risk as it was valued in 2000 is not a proxy for the loss or damage imposed by the shifted risk. The cost of the premium represents the amount that it was worth to BJC and ATG, at the time of purchase, to transfer the risk of a certain amount of potential claims to a third party. However, it does not follow that the damages from the breach of contract must therefore be the hypothetical cost of a replacement policy.

By purchasing a policy with a higher aggregate, the plaintiffs were exposed, and perhaps remain exposed, to greater risk than would have been the case under the Columbia policy. Plaintiffs do not attempt to quantify the value of this greater risk exposure.[2] Nor have plaintiffs incurred losses to date (i.e., liability over the $23,100,000 aggregate limit) which would have been indemnified under the old policy but were not, due to the increased aggregate limit in the replacement policy. Although the breach by the defendant has exposed the plaintiffs to additional risk, losses from that risk have not materialized. See Def.'s Mot. for Summ. J., Exh. A at 54 ("[BJC has] not breached an aggregate in any policy year including 2000.").

Plaintiffs argue that because a risk remains that claims for the 2000-2001 policy year might yet total more than the aggregate retention, they are without a remedy for those potential losses and

_____

[2] Plaintiffs do not claim damages connected with the greater contributions to the self-insurance fund required by the higher aggregate under the Zurich policy. See Def.'s Mot. for Summ. J., Ex. D at 10.

-9-

thus should be awarded the estimated cost of a policy that would have covered the potential losses. This argument fails to appreciate the fact that the value of a gap-covering policy would not appropriately compensate the plaintiffs for those losses if they occurred. If claims were to exceed the Zurich policy aggregate, plaintiffs could suffer damages in any amount between $1 million and $1.9 million that would be due to the defendant's breach; the value of the policy would likely either over- or under-compensate the plaintiffs for that loss.

Additionally, "[t]he cases dealing with this subject are replete with reminders that the requirement of reasonable certainty contemplates and demands something more than a showing of contingent or speculative occurrences, possible or even probable developments, or conjecture, likelihood and probability." <u>Thienes v. Harlin Fruit Co.</u>, 499 S.W.2d 223, 230 (Mo. App. 1973) (internal citations omitted). Plaintiffs argue that the defendant's breach leaves them without a remedy for potential claims above the aggregate limit for the policy year at issue. However, "even if injury and a cause of action have accrued as of a certain date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable." <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u> 401 U.S. 321, 339 (1971). <u>See also</u> <u>Hahn v. McDowell</u>, 349 S.W.2d 479, 482 (Mo. App. 1961)("Consequences which are contingent, speculative, or merely possible are not proper to be considered by the jury in ascertaining the damages, for it would

be plainly unjust to compel one to pay damages for results that may or may not ensue and which are merely problematical."). Because claims in excess of the aggregate limit are speculative, they are not proper measures of the plaintiffs' damages.

Since the estimated cost of a policy to cover the gap in aggregate retention does not represent an actual loss incurred by the plaintiffs, it cannot be recovered as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion [#68] for partial summary judgment concerning recoverable damages is **granted**.

**IT IS FURTHER ORDERED** that the plaintiffs will not be permitted to introduce evidence relating to this element of the damage claim at trial.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of December, 2005.